IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  12-cv-03263-LTB

PATRICIA A. QUINTANA,

        Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

        Defendant.

---

## ORDER

---

      Plaintiff Patricia Quintana appeals from the Social Security Administration Commissioner's (the "Commissioner") final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), filed pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral argument will not materially aid in resolving this appeal.  After considering the parties' arguments and the administrative record, for the reasons below, I affirm the Commissioner's final order**.**

## I.  STATEMENT OF THE CASE

      Plaintiff seeks judicial review of the Commissioner's decision denying her October 24, 2006 application for SSI and DIB.  [Administrative Record ("AR") Doc. # 8-5, 2-13].  Her application was initially denied at the administrative level.  [*Id.* at 8-3, 2-3].  An Administrative Law Judge ("ALJ") subsequently conducted a hearing on September 3, 2008 (*Id.* at 8-2, 66-80), and issued a written ruling on June 1, 2009.  (*Id.* at 8-3, 5-17).  The ALJ denied Plaintiff's application on the basis that she was not disabled during the relevant time period because she

could perform work in the national economy given her residual functional capacity ("RFC"), age, education, and work experience.  [*Id.*]  Plaintiff appealed the denial of her application to the Social Security Administration Appeals Council ("Appeals Council").  [*Id*. at 8-4, 2-6].  On December 30, 2011, the Appeals Council vacated and remanded the ALJ's decision for further consideration.  [*Id*. at 8-3, 18-20].

Upon remand, the ALJ held another hearing on August 12, 2011.  [*Id.* at 8-2, 36-65].  On October 31, 2011, the ALJ again found Plaintiff not disabled.  [*Id*. at 11-32].  Plaintiff filed exceptions with the Appeals Council on December 8, 2011, of which the Appeals Council declined to assume jurisdiction on October 15, 2012.  [*Id*. at 2-10].  Thus, the ALJ's decision was the final decision of the Commissioner for purposes of judicial review.

Plaintiff timely filed her Complaint with this Court seeking review of the Commissioner's final decision.  [Doc. # 1].

## II.  FACTS

The facts are largely undisputed and extensively provided in the ALJ's order.  As such, I provide a limited factual background as relevant here.

Plaintiff was born in 1955 and was 51 years old on her alleged amended onset date of March 31, 2006.  [AR Doc. # 8-2, 11-16].  She graduated from high school and her past relevant work history consists of work as a housekeeper/cleaner, a fast-food cook, a cashier-checker, a dietary aide, and a laundry attendant.  [*Id*. at 77-78].  Pursuant to 20 C.F.R. § 404.130, in order to be eligible for benefits, Plaintiff must prove that her disability began before the date through which she remained insured, which in this case was March 31, 2010.  [*Id.* at 14].  Thus, here, the relevant time period for determining disability is March 31, 2006 through the date of the ALJ's

decision, October 31, 2011.  [*See id.*]; 20 C.F.R. § 404.130.

During the relevant time period, Plaintiff was not engaged in substantial gainful activity. [AR Doc. # 8-2, 16].  As relevant here, Plaintiff saw her primary care physician, Dr. Vui Mai, from March 28, 2006 to July 11, 2011.  [*Id.* at 8-8, 49-104; 8-9, 2-131; 8-11, 9-64, 69-81].  Throughout her treatment with Dr. Mai, Plaintiff regularly complained of various pains throughout her body and had been diagnosed with fibromyalgia.  [*Id.* at 90].  Dr. Mai described Plaintiff 's fibromyalgia as resulting in "pain . . . pretty much throughout [Plaintiff 's] body," though it is "[m]ainly in the back, neck, and large joints."  [*Id.* at 51].  Throughout the relevant time period Dr. Mai noted that Plaintiff's complaints of pain related to fibromyalgia resulted in tenderness all over Plaintiff's body, even upon minimal contact, and sometimes before contact. [*See, e.g., id.* at 49-50 ("Her body is diffusely tender with minimal palpation.  She just kept jumping and saying 'ouch' even before I started touching her.")].

Dr. Mai also diagnosed Plaintiff with chronic lower back pain.  [*See, e.g., id*].  Numerous MRIs and x-rays of her neck and lumbar spine show mild degenerative changes and a benign lesion in her thoracic spine, both of which are stable.  [*See, e.g. id.* at 8-7, 43-45 & 73]. Throughout the relevant time period, Plaintiff reported "severe lower back pain" that radiated into her legs.  [*Id.* at 67].  Plaintiff reported to Dr. Mai that her back pain has existed "for many, many years."  [*Id.* at 8-8, 84].  Plaintiff also had issues related to carpal tunnel syndrome, migraines, and gastrointestinal problems throughout the relevant time period, and complained of various problems with her knees, feet, and hips.  [*See, e.g., id.* at 8-8, 2-100].  Plaintiff took various medications including Valium and Neurontin to help with pain.  [*See e.g., id.* at 8-8, 49, 51, 71].  Dr. Mai's treatment notes provide that Plaintiff's various levels of activity include

walking daily, taking care of all household chores, and traveling for several days at a time. [*See, e.g., id.* at 8-9, 2-131]. Plaintiff was also diagnosed with mild depression that was managed through prescribed medications including Prozac and Cymbalta, that both help with fibromyalgia and with Plaintiff's psychological complaints (such as anxiety). [*See, e.g., id.* at 8-7, 80 & 8-8, 71].

In July 2008, Dr. Mai completed a form in which he indicated that Plaintiff should be limited to lifting no more than 10 pounds, both frequently and occasionally, and could only stand for four hours in a workday. [*Id.* at 8-8, 45-46]. Dr. Mai provided that he did not believe Plaintiff could return to work "unless her fibromyalgia/chronic pain syndrome is under control, her carpal tunnel syndrome is treated and her depression is under control." [*Id.* at 45]. Dr. Mai also provided a second written opinion in December 2008, in which he increased Plaintiff's lifting capacity to twenty pounds. [*Id.* at 8-9, 56]. He also decreased his assessment of Plaintiff's standing and sitting abilities, stating that Plaintiff could not "stand more than ½ hour," and could sit only "for a couple of hours" before her pain began increasing. [*Id.*]

The record also contains several opinions from doctors who treated Plaintiff, examined her, or otherwise reviewed her case. The earliest opinion is a "MED-9" form from January 2007 that was completed in connection with Plaintiff's application for aid from the state of Colorado, completed by Jeffrey Perry, M.D. [*Id.* at 8-7, 114-18]. The form generally indicates that Plaintiff had been, or would be, disabled for at least a year, and that Plaintiff had failed a trial of physical therapy and vocational rehabilitation. [*Id.*]

In June 2007 Plaintiff underwent a consultative examination by Jacquelyn Jonas, M.D. [*Id.* at 66-71]. Dr. Jonas performed various tests of Plaintiff 's physical condition and

functioning and provided that Plaintiff had significant limitations including only being able to stand for short periods of time, that Plaintiff suffered from chronic pain and a decreased range of motion throughout her body, and provided that Plaintiff "appears to be able to sit comfortably with no obvious limitation." [*Id.* at 71]. Dr. Jonas noted that Plaintiff used "an assistive device" to walk, but "questioned if the assistive device [was] necessary" upon "watch[ing Plaintiff] walk[] through the waiting room and [get] into her truck" with relative ease. [*Id.*] Plaintiff's strength, Dr. Jonas noted, appeared to be "very poor," but also questioned Plaintiff's "effort given on the exam." [*Id.*] Nevertheless, Dr. Jonas limited the amount Plaintiff could lift and carry to 10 pounds, both frequently and occasionally. [*Id.*] Dr. Jonas also provided that Plaintiff could not bend, stoop or crouch frequently but could reach, handle, feel, grasp, and finger frequently. [*Id.*]

In August 2007, Gayle Frommelt, Ph.D. reviewed Plaintiff's records and concluded that Plaintiff had an affective disorder, but that it was not severe, as it caused only mild difficulties in maintaining concentration, persistence, or pace. [*Id.* at 75-89]. That same month, Anthony LoGalbo, M.D. reviewed Plaintiff's medical records and noted that Plaintiff's "[s]ubjective complaints [were] out of proportion to [the] objective findings[,] which [were] mild." [*Id.* at 96]. He noted that Plaintiff's reported activities – which included "personal care, pet care, meal prep, [household] chores, driv[ing], shop[ping], and socializ[ing]" were "beyond what would be possible if the results from Dr. Jonas' examination reflected Plaintiff's true capabilities." [*Id.*] Instead, Dr. LoGalbo, concluded that Plaintiff was capable of occasionally lifting up to twenty pounds, frequently lifting up to ten pounds, and could stand/walk and sit for about six hours each during the workday. [*Id.* at 92]. He also opined that Plaintiff should never climb ladders, ropes,

or scaffolds; only occasionally climb ramps or stairs, stoop, and crawl; and frequently balance, kneel, and crouch.  [*Id*. at 93].

In July 2009, Plaintiff underwent another consultative examination by Velma Campbell, M.D.  [*Id*. at 8-10, 28-32].  Dr. Campbell reviewed Plaintiff's medical records and performed a physical examination.  [*Id*. at 30-31].  Dr. Campbell reported that Plaintiff suffered from minor sensation loss, "mild joint deformity consistent with osteoarthritis," and mild tenderness in her upper extremities with a somewhat limited range of motion and some loss of strength in her shoulders.  [*Id*. at 30].  However, Dr. Campbell provided that Plaintiff retained full range of motion and strength in her elbows and wrists.  [*Id*.]  Plaintiff also had some range-of-motion limitations in her lumbar spine and her lower extremities had some moderate tenderness but full strength and range of motion.  [*Id*. at 30-31].  Plaintiff, according to Dr. Campbell, should be limited to lifting or carrying 20 pounds less than one hour a day and 10 pounds less than 4 hours a day, could only stand/walk 20-30 minutes a day and less than 3 hours in an eight hour day, could not bend, stoop, or squat more than 3 hours per day, could not reach more than 1 hour a day, and could never climb ladders or step-stools.  [*Id*. at 31].  Additionally, Dr. Campbell provided that Plaintiff's psychological condition "exacerbate[ed] the impact" of her physical impairments.  [*Id*.]

Plaintiff was also examined by Benjamin Loveridge, M.D. in February 2010.  [*Id.* at 71-78].  Dr. Loveridge reviewed a small selection of Plaintiff's medical records from 2009 and noted that he was unable to fully evaluate Plaintiff, particularly her range of motion and musculoskeletal issues, her spine, and any neurologic problems, because she appeared to be exaggerating her discomfort and gave poor effort on testing.  [*Id*.]  He noted that she "did not

appear uncomfortable getting on and off the examination table" and was able to sit comfortably

through the exam. [*Id.* at 73]. Dr. Loveridge provided that, "[o]verall, [Plaintiff]'s medical

complaints did not seem consistent throughout the exam." [*Id.* at 76]. For example, "when she

first walked in, she was able to walk and talk fine, but by the end of the exam she was

exaggerating with pain movements and unable to do any physical examination secondary to

exaggerated pain and poor effort throughout." [*Id.*] Dr. Loveridge provided that Plaintiff could

stand/walk for 4 hours in a workday with breaks every 30-45 minutes, sit 4-6 hours with breaks

every 30-45 minutes, could lift and carry less than ten pounds, and would have difficulties

bending, stooping, crouching, and crawling. [*Id.*]

## III.  LAW

To qualify for benefits under sections 216(I) and 223 of the SSA, an individual must

meet the insured status requirements of these sections, be under age 65, file an application for

DIB and/or SSI for a period of disability, and be "disabled" as defined by the SSA. 42 U.S.C. §§

416(I), 423, 1382. Additionally, SSI requires that an individual meet income, resource, and

other relevant requirements. *See* 42 U.S.C. § 1382. A Five-Step sequential evaluation process is

used to determine whether a claimant is disabled under the SSA, which is generally defined as

the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One asks whether the claimant is presently engaged in substantial gainful activity.

If he is, benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether

the claimant has a medically severe impairment or combination of impairments, as governed by

20 C.F.R. § 404.1520©.  If the claimant is unable to show that his impairment(s) would have

more than a minimal effect on his ability to do basic work activities, he is not eligible.  *See* 20

C.F.R. § 404.1520©.  Step Three then assesses whether the impairment is equivalent to one of a

number of listed impairments deemed to be so severe as to preclude substantial gainful

employment.  *See* 20 C.F.R. § 404.1520(d).  If the impairment is not listed, he is not presumed to

be conclusively disabled.  Step Four then requires the claimant to show that his impairment(s)

and assessed RFC prevent him from performing work that he has performed in the past.  If the

claimant is able to perform his previous work, he is not disabled.  *See* 20 C.F.R. §§ 404.1520(e),

(f).  Finally, if the claimant establishes a *prima facie* case of disability based on the previous four

steps, the analysis proceeds to Step Five where the Commissioner has the burden of proving that

the claimant has the RFC to perform other work in the national economy in view of his age,

education and work experience.  *See* 20 C.F.R. § 404.1520(g).

## IV.  ALJ's RULING

The ALJ found that Plaintiff had met the insured requirements of the SSA through March

31, 2010.  [AR Doc. # 8-2, 14].  He ruled that Plaintiff had not engaged in substantial gainful

activity since her amended alleged onset date of March 31, 2006, through the date of the ALJ's

decision, October 31, 2011.  [*Id.* at 16].  The ALJ found that through the date of his decision the

Plaintiff had the following sufficiently severe impairments: "disorders of the spine; and

fibromyalgia" (Step Two).  [*Id.*]  However, the ALJ then determined that Plaintiff did not have

an impairment, or combination of impairments, that met or medically equaled one of the listed

impairments (Step Three) in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d),

404.1525, and 404.1526).  [*Id*. at 20].  Because the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, he then assessed Plaintiff's RFC.  [*Id*. at 21-28].

The ALJ evaluated the evidence, and found that through the date last insured Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: Plaintiff "can perform only occasional bending, squatting, kneeling, climbing, and with no overhead work." [*Id*. at 24].  As a result of Plaintiff's RFC assessment, the ALJ found that Plaintiff was able to perform her past relevant work as a cashier and dietary aide (Step 4).  [*Id*. at 28].  Because the ALJ concluded at Step Four that Plaintiff was able to perform her past relevant work, the ALJ did not continue to Step Five.  [*Id*.]  Consequently, the ALJ concluded that Plaintiff was not disabled between her alleged onset date and the date last insured.  [*Id*. at 28].

## V.  STANDARD OF REVIEW

I review the Commissioner's decision (expressed here as the ruling of the ALJ) "to determine whether the factual findings are supported by substantial evidence in light of the entire record and to determine whether the correct legal standards were applied."  *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003).  My review of the factual findings is to determine whether they, "are based upon substantial evidence, and inferences reasonably drawn therefrom.  If they are so supported, they are conclusive upon the reviewing court and may not be disturbed."  *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (quotations omitted).  It

requires "more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

## VI.  APPEAL

Plaintiff challenges the ALJ's determinations on five grounds.  First, Plaintiff contends that the ALJ's Step Four evaluation of Plaintiff's treating physician, Dr. Vui Mai, was improper. Second, the Plaintiff contends that the ALJ's Step Four evaluation of two consulting physicians' opinions, Dr. Velma Campbell and Dr. Jacquelyn Jonas, was improper.  Third, Plaintiff challenges the ALJ's determination of Plaintiff's credibility.  Fourth, Plaintiff contends that the ALJ erred in his RFC analysis.  Fifth, Plaintiff contends that the allegedly new evidence provided to the Appeals Council should be considered.  I address each of Plaintiff's arguments in turn below.

### A.      ALJ's Evaluation of Treating Physician's Opinion

Plaintiff argues that the opinion of his treating physician, Dr. Vui Mai was well supported by the evidence, not contradicted by any other medical evidence, and thus should have been given controlling weight.  For the reasons below, I disagree.

The parties do not dispute that Dr. Mai was a treating source.  According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F .R. § 404.1527(c)(2).  In fact, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995).  A treating physician's opinion is accorded this weight because of the unique perspective they have to the

medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

When assessing how much weight to give a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct.  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  The ALJ must first determine whether the opinion is conclusive– that is, whether it is to be accorded "controlling weight" on the matter to which it relates.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330.  To do so, the ALJ:

> [M]ust first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [ . . . ] [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F3d at 1300 (*applying* SSR 96-2p, 1996 WL 374188, at *2) (internal quotation marks and citations omitted); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If, however, a treating physician's opinion is not entitled to controlling weight, the ALJ must proceed to the next step because, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F3d at 1300.  At Step Two, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330.  If this is not done, remand is mandatory.  *Id.*  As SSR 96-

2p explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *4) (emphasis added).  Hence, the absence of a condition for controlling weight raises, but does not resolve the second, distinct question of how much weight to give the opinion.  *Id.* at 1330-31 (*citing Langley*, 373 F.3d at 1120) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this basis")).  In weighing the opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.  In applying these factors, "an ALJ must 'give good reasons in the notice of determination or decision' for the weight he ultimatel[y] assign[s] the opinion."  *Watkins*, 350 F.3d at 1300 (*quoting* 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).  Without these findings, remand is required.  *Watkins*, 350 F.3d at 1300-01; *accord Krauser*, 638 F.3d at 1330.  Lastly, if the ALJ rejects the opinion entirely, he must give "specific, legitimate reasons" for doing so.  *Watkins*,

350 F.3d at 1301.

Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr. Mai, Plaintiff's primary care physician from March 28, 2006 to July 11, 2011. [AR. Doc. # 8-8, 49-104; 8-9, 2-131; 8-11, 9-64, 69-81]. In addition to Dr. Mai's treatment notes, Dr. Mai provided his opinion as to Plaintiff's condition in a worksheet provided by Plaintiff's attorney, dated June 24, 2008. [*Id.* at 8-8, 44-47]. In the worksheet, Dr. Mai concluded that Plaintiff could stand/walk a total of four hours in an eight-hour work day, and could not lift more than 10 pounds occasionally. [*Id.* At 46]. He did not provide any restrictions as to Plaintiff's ability sit for any period of time, nor any restrictions on Plaintiff's fine motor skills. [*Id.*] In an attached letter, Dr. Mai provided that Plaintiff has "multiple chronic medical conditions" including "fibromyalgia, chronic pain syndrome, and carpal tunnel syndrome" that prevent her from working. [*Id.* at 45].

In determining that Dr. Mai's opinions were not entitled to controlling weight, the ALJ explained that Dr. Mai's opinions as to Plaintiff's limitations were not well-supported by the record as a whole, lacked objective support or clinical findings, were from a "check the box" worksheet that did not allow "the physician to complete the form in a narrative manner," and were inconsistent with other substantial evidence in the record, including his own treatment notes. [*Id.* at 8-2, 26]. The ALJ's determination at this step was proper. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (holding that if a treating physician's opinion is inconsistent with other substantial evidence in the record it is not entitled to controlling weight).

The ALJ then moved to the second step of the analysis and provided the weight to be given to Dr. Mai's opinions in his examination records and the worksheet. In determining that

Dr. Mai's opinions in the worksheet were not entitled to any weight, the ALJ cited four of the factors from 20 C.F.R. § 404.1527©: Dr. Mai's opinions were based on visits related to Plaintiff's treatment of carpal tunnel; Plaintiff's complaints were not supported by other evidence in the record; Plaintiff did not seek specialists recommended by Dr. Mai for Plaintiff's other complaints; and Dr. Mai's opinions were not consistent with the other substantial evidence, including his own examination records from, (AR Doc. # 8-2, 23-27).  *See* 20 C.F.R. §§ 404.1527(c)(2)(treatment relationship), 404.1527(c)(3)(supportability), 404.1527(c)(4) (consistency), and 404.1527(c)(5)(specialization).  In regards to Dr. Mai's treatment relationship, the ALJ pointed out that Dr. Mai primarily saw Plaintiff for treatment of Plaintiff's carpal tunnel, and did not treat the other complaints Plaintiff alleges here.  [AR Doc. # 8-2, 23-37].  In regards to supportability, the ALJ discussed that not only did Dr. Mai's own treatment notes not support the worksheet's restrictions, but that other evidence in the record also did not support it.  [*Id.*] The ALJ emphasized that Dr. Mai's reports of Plaintiff's conditions were based on Plaintiff's subjective complaints and lacked supporting objective evidence.  [*Id.* at 23].  The ALJ also provided two examples of inconsistency: first, Dr. Mai's worksheet was inconsistent with the his own treatment notes, which provided that Plaintiff consistently had "no gait disturbance and had normal neurological exams, with normal range of motion in all joints, and no motor, reflect, or sensory deficits" [*id.*]; and second, Dr. Mai's restrictions were inconsistent with Plaintiff's daily activities including traveling out of town for several days at a time, caring for her husband, managing household activities including cleaning, cooking, and shopping, and driving.  [*Id.* at 24].

The ALJ also discussed Dr. Mai's opinions in his examination records.  [*Id.* at 8-2, 23-26].  Among the records considered by the ALJ were Dr. Mai's treatment notes from March 28, 2006 to July 11, 2011.  [AR. Doc. # 8-8, 49-104; 8-9, 2-131; 8-11, 9-64, 69-81].  The ALJ pointed out that throughout these notes Dr. Mai had noted that, while Plaintiff complained of pain, that this was a "subjective complaint" and that Dr. Mai "repeatedly noted that [Plaintiff] had no gait disturbance and had normal neurological exams, with normal range of motion in all joints, and no motor, reflex, or sensory deficits."  [AR Doc. # 8-2, 23].  The ALJ also discussed the fact that Plaintiff had "been treated most conservatively, principally with medication," and that Plaintiff had "pervasive non-compliance issues in the taking of medication, as well as in following through on recommended water therapy or referrals, suggesting that her [subjective complaints] were not as severe as alleged."  [*Id.* at 24].  The ALJ also pointed out that Plaintiff did not "seek out a referral to a rheumatologist until recommended to do so by her representative, with a University Hospital specialist declining to see her based on negative lab studies."  [*Id.* at 25].

Based on a review of the record, I find that the ALJ did not err when he gave Dr. Mai's opinions no weight.  The ALJ properly noted the limited depth of treatment by Dr. Mai, that Dr. Mai's opinion was largely, if not wholly, based on Plaintiff's subjective complaints, that Dr. Mai's limitations lacked objective support, and that Dr. Mai's opinion was inconsistent with Dr. Mai's treatment notes and other evidence in the record.  The ALJ also properly noted that Dr. Mai's finding that Plaintiff was "disabled" is a determination properly left to the Commissioner.  Additionally, the ALJ's findings are in line with Dr. Anthony LoGalbo's medical consultation, which the ALJ gave great weight.  [*See id.* at 25].  Thus, the ALJ appropriately gave no weight to

Dr. Mai's opinions that Plaintiff was unable to work inasmuch as it was inconsistent with

Plaintiff's daily activities and the contradictory medical evidence found in Dr. Mai's treatment

records and other evidence in the record.  *See Plummer v. Apfel*, 186 F.3d at 429 (recognizing

that a practitioner's opinion may be rejected if there is contradictory medical evidence); 20

C.F.R. § 404.1527(d)(3) (specifying that the "more a medical source presents relevant evidence

to support an opinion, . . . the more weight we will give that opinion").

Accordingly, I find no error in the ALJ's decision to give Dr. Mai's opinion no weight,

*see Watkins*, 350 F.3d at 1301, which is supported by substantial evidence in the record.

**B.      ALJ's Evaluation of Examining Physicians' Opinions**

As discussed in the section above, an ALJ must consider the opinions of reviewing

physicians and evaluate them based on the factors listed in 20 C.F.R. § 404.1527(a) to (d), "such

as the consultant's medical specialty and expertise in our rules, the supporting evidence in the

case record, supporting explanations [the physicians] provides, and any other factors relevant to

the weighing of the opinions."  20 C.F.R. § 404.1527(e)(2)(ii).  Unless the opinion of a treating

source is given controlling weight, an ALJ must explain the weight given to the opinion of a

reviewing physician.  *Id.*

Plaintiff argues that the ALJ failed to properly consider the opinions of examining

sources Dr. Campbell and Dr. Jonas.

### 1.      Dr. Campbell

Plaintiff contends that the ALJ failed to "indicate what weight, if any, was given to the opinions from examining board-certified occupational medicine specialist, Dr. Campbell." [Doc. # 16, 26]. However, the ALJ explicitly provided that he gave Dr. Campbell's opinion "some weight" because her findings "relied heavily on the subjective reporting of symptoms and limitations as alleged by [Plaintiff], which were not supported by resultant examination, with Dr. Campbell even noting that [Plaintiff] was engaged in exaggerated pain behaviors through the exam." [AR Doc. # 8-2, 27].

The ALJ did not err in his treatment of Dr. Campbell's opinion. The absence of support for her opinion in her examination notes is a legitimate basis for discounting her opinion. *See* 20 C.F.R. § 404.1527(c)(1), (2), (3), and (4). I conclude that the ALJ provided sound reasons for giving Dr. Campbell's opinion little weight. Those reasons were supported by substantial evidence on the record. I, therefore, affirm the decision of the Commissioner on this issue. *Hackett*, 395 F.3d at 1172 (the court may not reweigh the evidence or substitute its judgment for that of the ALJ).

### 2.      Dr. Jonas

Plaintiff also contends that the ALJ improperly weighed the opinion of examining physician Dr. Jonas. The ALJ gave Dr. Jonas' opinion "some weight" because he found it "consistent with and supported by other evidence of record, particularly the fact that [Plaintiff] exaggerated her pain complaints and gave poor effort, with Dr. Jonas noting [that Plaintiff] had greater capabilities than exhibited, particularly when climbing into the 'very large truck' after

the exam." [AR Doc. # 8-2, 26].  The ALJ explained that it could not give Dr. Jonas' opinion great weight "due to the question of poor effort by [Plaintiff], and the fact that it appears Dr. Jonas accorded [Plaintiff] significant accommodation in the amount of weight she could lift and carry, when this is not supported by the evidence." [*Id.*]

This analysis clearly sets forth the weight the ALJ accorded Dr. Jonas' medical opinion and indicates that he applied the relevant factors listed in § 404.1527©, including the nature and extent of the treatment relationship, the supportability, and the consistency of the opinion. *See* 20 C.F.R. § 404.1527(c)(2)(ii), (3), and (4).  The ALJ was not required to "explicitly discuss all the § 404.1527© factors for each of the medical opinions before him," but only to "provide[ ] good reasons in his decision for the weight he gave to the treating sources' opinions," for example, by citing to "contrary, well-supported medical evidence" in the record. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  The ALJ's analysis here was sufficient and complete.  Thus, Plaintiff's argument that the ALJ should have contacted Dr. Jonas for clarification of the opinion is incorrect.

The ALJ provided sound reasons for giving Dr. Jonas' opinion "little weight," and those reasons were supported by substantial evidence in the record.   Thus, the ALJ's decision as what weight to accord the opinion of Dr. Jonas is affirmed.

**C.**     **ALJ's Assessment of Plaintiff's Credibility**

Plaintiff challenges the ALJ's credibility determination as to the Plaintiff.

Generally, credibility determinations are the province of the ALJ, who is "the individual optimally positioned to observe and assess witness credibility." *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  Although the court ordinarily defers to the ALJ as trier of fact on credibility, deference is not an absolute rule.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citations omitted).  While "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence," the ALJ must link his or her credibility finding to substantial evidence.  *Id.* (internal citations omitted).  This entails that the ALJ explain why specific evidence led to a conclusion that the claimant's subjective complaints were not credible.  *Id.*  These findings as to credibility should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id.* (*quoting Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)).  The ALJ must articulate specific reasons for questioning the claimant's credibility where subjective pain testimony is critical.  *Kent v. Apfel*, 75 F. Supp. 2d 1170, 1182 (D. Kan. 1999) (*citing Kepler*, 68 F.3d at 391).

To be disabling, pain must be severe enough to preclude any substantial gainful employment whether by itself or in combination with other impairments.  *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986).  The Tenth Circuit has set forth the following framework for analyzing evidence of allegedly disabling pain: (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact

disabling. *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).

Objective evidence includes physiological and psychological evidence that can be verified by external testing. *Thompson*, 987 F.2d at 1488-89. Subjective evidence comprises of statements from the claimant and other witnesses that are evaluated on their credibility. *Id.* at 1489. If objective medical evidence shows a pain-producing impairment, the ALJ must then consider the claimant's allegations of severe pain and decide whether to believe them. *Id.* Factors to be considered at this point include:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony and objective medical evidence.

*Kepler*, 68 F.3d at 391 (*quoting Thompson*, 987 F.2d at 1489).

Plaintiff contends that the ALJ did not apply the correct legal standard to evaluate the credibility of her testimony regarding her subjective complaints of pain. She argues that the ALJ's credibility determination was in error because the ALJ disregarded her subjective complaints of pain, alleged objective findings, and her purportedly limited daily activities.

In his opinion, the ALJ found that there was objective medical evidence of a pain-producing impairment, and that there was a nexus between the impairment and the allegations of pain. [AR Doc # 8-2, 21]. However, after his consideration of the record, the ALJ concluded that Plaintiff's statements regarding "the intensity, persistence and limiting effects of these symptoms" were not credible to the extent that "they are inconsistent with the" RFC assessment.

20

[*Id.*]  The ALJ concluded that Plaintiff's pain levels would allow her to "perform light work, as levels defined in 20 CFR 404.1567(b) and 416.967(b), except [Plaintiff] can perform only occasional bending, squatting, kneeling, climbing, and with no overhead work." [*Id.*]  Despite Plaintiff's assertion to the contrary, I find that the ALJ satisfied the analysis required by *Luna v. Bowen* and, therefore, do not find a basis to reverse on this issue.

Specifically, the ALJ found Plaintiff's testimony with regard to the severity of her pain and her ability to perform any work was not credible.  [AR Doc # 8-2, 21-28].  The ALJ discussed several factors he relied upon in finding Plaintiff's pain testimony not credible. *See* SSR 96-7p, 1996 WL 374186, at * 3 (citing factors relevant to the credibility determination, including claimant's daily activities; the location, duration, and intensity of claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms); *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p).  An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." *Id.*; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

Here, the ALJ concluded that Plaintiff's daily activities did not support a finding that she is precluded from all types of work activity.  [AR Doc # 8-2, 21-27].  The ALJ noted that Plaintiff testified she was "independent in her activities of daily living, [] she cares for her husband, who is [] disabled, and she continues to manage the household activities, including

cleaning, cooking, and shopping, and continues to drive." [*Id.* at 24]. The ALJ also discussed

that, on at least two occasions, treatment notes form various physicians indicate that Plaintiff

went out of town for multiple days." [*Id*. at 24]. Furthermore, the ALJ noted several times in his

opinion that "three, independent, consultative physicians all noted that the claimant had

exaggerated symptoms and limitations." [*Id.*]

The ALJ also found that Plaintiff's allegations of disabling limitations were not

consistent with, or supported by, the objective medical findings. [*Id.* at 21-28]. The ALJ

included in his decision the fact that Plaintiff had received "essentially routine and conservative"

treatment, failed to seek specialists, and noted several times that "repeated imaging of [] her

cervical, thoracic, and lumbar spine has shown own nominal or mild degenerative changes, with

such changes stable over time." [*Id*. at 21-22]. The ALJ noted that specifically related to her

lumbar spine, "repeat x-ray imagining of the [Plaintiff's] lumbar spine . . . showed that her

condition was stable." [*Id.*] The ALJ also noted that Plaintiff's treatment has been "essentially

routine and conservative in nature," principally with medication, and that "pervasive non-

compliance issues on the part of [Plaintiff] in taking prescribed medication to treat her condition,

and suggesting that her condition is not as severe as alleged." [*Id.*]

Based upon my review of the ALJ's credibility determination and the record, I conclude

that the ALJ appropriately and adequately explained with specific evidence his conclusion that

Plaintiff's subjective complaints, although limited in themselves, regarding the severity of her

pain and her inability to perform any work were not credible. Furthermore, I find that substantial

evidence in the record supports the ALJ's credibility determination. Because the ALJ's

credibility findings "are closely and affirmatively linked to substantial evidence," *Hackett*, 395

F.3d at 1173, the determination should not be disturbed. Plaintiff's argument with respect to the ALJ's credibility determination asks me to reweigh the evidence and to substitute my judgment for that of the Commissioner, which I decline to do.  *Id.* at 1172.

**D.      ALJ's Assessment of Plaintiff's Obesity**

Under Social Security Regulation ("SSR") 02-1p, an adjudicator must consider the effects of obesity when evaluating disability.  *See* SSR 02-1p, 2000 WL 628049 (2002).  There is no question that an ALJ must discuss the impact of obesity where it is an explicit part of the claimant's alleged impairments, or where the medical evidence suggests that obesity contributes to a reduction in a claimant's RFC.

Here, Plaintiff never raised obesity as an impairment or limitation before the ALJ, in her applications for benefits, nor at any other time during her application process, nor did she specify or discuss how her alleged obesity further impairs her ability to work in either of her applications (AR Doc. # 8-5, 2-13), during any of her multiple consultative examinations (*id*. at 8-7, 66-72 & 8-10, 28-32, 71-78), or at either of the hearings before the ALJ (*id.* at 8-2, 39-80). There is no evidence in the record suggesting that Plaintiff's weight has contributed to an impairment.  The record shows that Plaintiff's treating physician discussed above, Dr. Mai, consistently noted her weight and Body Mass Index ("BMI"), but never diagnosed Plaintiff as obese.  [*Id.* at 8-8, 49-104; 8-9, 2-131; 8-11, 9-64, 69-81].  Additionally, I note that Plaintiff's weight was consistently on the low end of the BMI scale for obesity, and sometimes fell under the category of overweight instead of obese.  Given the state of the evidence and the claims actually advanced before the ALJ, I do not find any basis for reversal based on Plaintiff's argument that the ALJ

should have considered Plaintiff's obesity in the opinion.  *See Callicoatt v. Astrue*, 296 Fed.

Appx. 700 (10th Cir. 2008) (holding that even if an ALJ had an affirmative duty to consider

claimant's obesity when it was not asserted by claimant, the ALJ's failure to consider claimant's

obesity in combination with her other impairments, in denying her third application for DIB and

SSI benefits was harmless error, where claimant did not show that her obesity exacerbated her

other impairments).

**E.     Evidence Submitted to the Appeals Council**

Plaintiff argues that the Appeals Council received additional evidence from Plaintiff, and

as such, the Appeals Council, and this Court, should properly include it in its review of the

ALJ's decision.

Additional evidence is considered by the Appeals Council only if it is (a) new, (b)

material, and (c) related to the period on or before the date of the ALJ's decision.  *See Chambers*

*v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (*citing* 20 C.F.R. § 404.970(b)).  "Whether

[evidence] qualifies as new, material and chronologically relevant is a question of law."  *Id.*

(internal quotation omitted).  Evidence is new if it is not duplicative or cumulative.  *Threet v.*

*Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).  Evidence is material if "the Secretary's

decision might reasonably have been different had the new evidence been before him when his

decision was rendered."  *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (internal

quotations and citations omitted).  "If the evidence does qualify and the Appeals Council

considered it in connection with the claimant's request for administrative review, it becomes part

of the record in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142.

Here, the Appeals Council stated that it considered the evidence and determined that "this information does not provide a basis for changing the Administrative Law Judge's decision." [AR Doc. # 8-2, 2-3]. When the Appeals Council states that it considered new evidence- as it did here- the Appeals Council is not also required to expressly analyze the evidence. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006). I have reviewed that information and agree that the evidence was not material, was duplicative, and cumulative. I therefore find that the Appeals Council did not err with respect to this issue, and my review of the ALJ's decision, which included the added evidence, is not altered by it. Thus, I affirm the ALJ's rejection of a Plaintiff's alleged impairment even with the new evidence considered by the Appeals Council augmenting the record.

## VII.  CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's final order.


Dated: April 1, 2014, in Denver, Colorado.


                              BY THE COURT


                                s/Lewis T. Babcock
                              LEWIS T. BABCOCK, JUDGE